H. C. DENNY & CO. v. LEE. (No. 5623.)*

(Court of Civil Appeals of Texas. Austin. May 11, 1916. Rehearing Denied June 28, 1916.)

ESTOPPEL ☞92(3) — GROUNDS — ACCEPTANCE OF BENEFITS.

Where the payee of a note, purporting on its face to be given for the price of one-third interest in property, transferred the note to the plaintiffs as collateral security for a loan and after the adjudication in bankruptcy of the payee, the maker and payee executed a deed and transferred possession of the property to the plaintiffs, in consideration of which the note was to be canceled and discharged, although the plaintiffs subsequently purchased the property and note from the payee's trustee in bankruptcy, they were estopped to deny the validity of the agreement by which the maker was released from liability on the note.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 262; Dec. Dig. ☞92(3).]

Error from District Court, Bell County; John D. Robinson, Judge.

Suit by H. C. Denny & Co. against W. J. Lee. From a judgment for defendant, plaintiffs bring error. Affirmed.

John B. Durrett, of Belton, for plaintiffs in error. W. W. Hair and Winbourn Pearce, both of Temple, and A. L. Curtis, of Belton, for defendant in error.

KEY, C. J. H. C. Denny & Co. brought this suit against W. J. Lee and sought to recover upon a promissory note for $5,000 executed by Lee and made payable to the order of R. E. Rankin and transferred by the latter to Denny & Co. The note was dated October 16, 1906, was due five years after date, and showed upon its face that it was for the purchase money of the property known as the Bell County Roller Mills, and was secured by a vendor's lien upon that property. In his answer the defendant pleaded the cancellation and discharge of the note in the manner hereafter referred to. The plaintiffs assert that at the time of the agreement among the plaintiffs, defendant, and R. E. Rankin, by which the defendant claimed to have been discharged from liability upon the note, Rankin had been declared a bankrupt, and his estate was in course of administration in the proper federal District Court, and therefore the agreement referred to did not have the effect of discharging the defendant Lee from liability upon the note, and that in due course of the bankruptcy proceedings the note was sold by the trustee in bankruptcy and was bought in by the plaintiffs, Denny & Co. They did not plead the pendency of the bankruptcy proceeding at the time the agreement was made.

The trial court instructed the jury to return a verdict for the plaintiffs for the amount of the note, interest, and attorney's fees, unless they found for the defendant under the following instruction:

"If you find from the evidence that on or about the 29th day of May, 1908, W. J. Lee and R. E. Rankin executed a deed to Chas. F. Denny for the benefit of H. C. Denny & Co., to what is commonly known as the Bell County Roller Mill property, the same being situated at that time on certain lots on fractional block 47 of the original town of Belton, Bell county, Tex., and if you further find from the evidence that it was agreed by and between W. J. Lee, R. E. Rankin, and H. C. Denny & Co., that in consideration of said conveyance the $5,000 note herein sued on was canceled, satisfied, and discharged, and if you further find that in pursuance of said agreement and the execution of said deed the said H. C. Denny & Co. accepted the same and went into possession of said property as owners thereof, then you will return a verdict for the defendant."

The jury returned a verdict for the defendant, upon which the court rendered judgment in his favor, and the plaintiffs have brought the case to this court by writ of error.

The proof shows that at the time the note sued on was executed R. E. Rankin, who was then the owner of the Bell County Roller Mills property, made a contract with the defendant, W. J. Lee, by which the latter became the purchaser of a one-third interest in the property referred to, upon an agreement that it was to be operated as partnership property. However, no deed was executed by Rankin conveying to Lee his one-third interest. Thereafter, on March 7, 1907, R. E. Rankin and W. J. Lee borrowed $10,-000 from the plaintiffs, H. C. Denny & Co., for which they executed three notes, each for one-third of the amount borrowed, and at the same time they executed a deed of trust upon the Bell County Roller Mills property to secure the loan referred to, and the $5,-000 note sued upon in this case was transferred by Rankin to Denny & Co. to be held as collateral security for the $10,000 and the three notes executed therefor. On the 28th day of March, 1908, R. E. Rankin was adjudged a bankrupt, and on the 29th day of May, 1908, an agreement was entered into among R. E. Rankin, W. J. Lee, and Denny & Co., as a result of which R. E. Rankin, W. J. Lee, and his wife, Alice Lee, executed a deed conveying to Denny & Co. the Bell County Roller Mills property, the consideration recited in the deed being the payment, satisfaction, cancellation, and discharge of the balance owing by R. E. Rankin and W. J. Lee upon the three notes hereinbefore referred to, given for the $10,000 borrowed by Rankin and Lee from Denny & Co. and secured by deed of trust upon the mill property.

The defendant, Lee, averred in his answer that a further consideration for the execution of that deed was an agreement among all three of the parties to the effect that the $5,-000 note sued upon in this case, and then held by Denny & Co. as collateral security for the three notes executed by R. E. Rankin and defendant, Lee, was to be canceled and

discharged. That issue was submitted to the jury, decided in favor of Lee upon evidence which supports that decision, and therefore the case must be disposed of in this court upon the assumption that the agreement of cancellation and discharge was made as alleged by the defendant. Subsequent to that agreement, the plaintiffs, Denny & Co., made the necessary affidavit to prove up their $10,000 claim against R. E. Rankin in the bankruptcy court, including the alleged fact that their demand against Rankin for $10,000 was secured by a trust deed on the Bell County Roller Mills property, and by the note involved in this suit, which had been deposited with the plaintiffs as collateral security. Thereafter, and in due course of bankruptcy proceedings the Roller Mills property and the $5,000 note here involved were sold and conveyed to the plaintiffs by the trustee in bankruptcy by a deed of conveyance executed June 23, 1909. The defendant, Lee, alleged and proved that the proceedings referred to were inaugurated and consummated without any notice to him, and also charged that they were fraudulent as against him.

Without referring specifically to the assignments of error, it is sufficient to say that the ground upon which a reversal is sought is clearly stated in the following proposition copied from the brief filed by counsel for plaintiffs in error:

"After an adjudication in bankruptcy has been made, the title to all the property of the bankrupt as of that date passes to the person who is subsequently chosen trustee; the trustee of the estate, upon his appointment and qualification, is vested by operation of law with the title of the bankrupt to his property as of the date he was adjudged a bankrupt; and all titles claimed through or under him subsequent to adjudication are by force of law, and without regard to the knowledge or motives of the one so claiming, overthrown and defeated."

As a general rule, the soundness of that proposition may be conceded; but we regard this case as an exception to it. The only interest which the plaintiffs first had in the note here involved resulted from the fact that it had been delivered to them as collateral security for the $10,000 which they loaned to Rankin and Lee. Lee's liability to the plaintiffs upon the note so held by them as collateral security was not primary, but secondary only; and whenever the debt for which that note was held as security was discharged, the plaintiffs' right to enforce payment of the collateral security terminated. According to the finding of the jury, the plaintiffs entered into an agreement with Lee to the effect that, if he and his wife would join Rankin in the deed conveying the Roller Mills property to the plaintiffs, his liability to the plaintiffs upon the note involved in this case would terminate. He and his wife executed that deed, and the undisputed proof shows that the plaintiffs immediately thereafter took possession of the property thereby conveyed, and have held it as their own ever since.

As no bankruptcy proceedings were pending against either Denny & Co. or W. J. Lee, it cannot be successfully contended that the agreement referred to did not have the effect of releasing the latter from the then existing liability to the former, in so far as the $5,000 note was concerned; but this case involved another and more difficult question. But, conceding that after making the contract referred to Denny & Co. had no further interest in the note, the fact remains that it was apparently an asset of R. E. Rankin's estate, which estate at the time the contract was made was being administered by the bankruptcy court, and therefore Rankin had no power to make a contract for the release of Lee which would prevent that court from dealing with the note as an asset of the bankrupt estate; and that court, in the exercise of its jurisdiction over Rankin's estate, made an order directing the trustee in bankruptcy to sell both the mill property and the note; and the latter having reported that Denny & Co. had offered to take the mill property and the note in satisfaction of the claim which they had proved up against the estate, the court authorized the trustee to accept that offer, which was done, and the trustee made a deed conveying the mill property and the note to Denny & Co. That deed recites an additional consideration of $175, but the undisputed testimony of appellants' witness C. F. Denny indicates that such recited consideration was not in fact paid; but we do not regard that fact as of any particular importance.

Appellant's contention is that as the note in question was made payable to R. E. Rankin, and was regularly sold before its maturity by the trustee in bankruptcy, and bought in by appellants, they thereby acquired title to it, and that their right to enforce its payment cannot be defeated by reason of the contract formerly entered into by themselves, Rankin, and Lee, for the reason that, as Rankin's estate was then being administered by the bankruptcy court, he had no power to contract for the release of Lee. While that question is not altogether free from difficulty, we have reached the conclusion that appellants' contention is unsound. It must be born in mind that the note in question showed upon its face that it was given for the purchase price of a one-third interest in the mill property. There was other testimony showing clearly that appellants knew that fact at the time the contract was made by which appellants and Rankin agreed, in substance, that if Lee and his wife would join Rankin in a deed conveying the mill property to appellants he should be released from liability upon the note. That agreement was the consideration moving appellee and his wife to execute the deed, by which he was divested of his title to the mill property and such title was vested in appellants. Knowing all these facts, appellants accepted the deed referred to, took possession of the mill property, and have enjoyed its use ever since, and therefore they are estopped from denying the validity of the agreement by which

they and Rankin undertook to release appellee from liability on the note. In other words, if appellee had declined to convey his interest in the mill property to appellants, then, upon payment of the note in controversy, he would become the absolute owner of a one-third interest in the mill property; whereas, on account of the execution by him of the deed referred to, the consideration for the note has failed, and if he is compelled to pay it now he loses the consideration for which it was given, and, as disclosed by the record, obtains no benefit whatever, except that he received a salary of $100 a month for about 18 months while acting as manager of the mill, which, no doubt, is fully offset by the fact that appellants have had the exclusive use and benefit of all the property ever since the contract referred to was made. So it appears that all the equities are in appellee's favor. In fact, the books do not reveal many cases which appeal more strongly to the conscience of a chancellor for the interposition of equity powers to prevent the consummation of what would otherwise be a gross wrong. It would, we think, be a violation of a cardinal rule of equity to permit appellants to enjoy the benefits which have resulted to them, and at the same time deny the validity of the contract through which they obtained such benefits.

This disposes of the only questions presented to this court for decision; and as we decide them against the plaintiffs in error, it follows that the judgment should be affirmed; and it is so ordered.

Affirmed.